UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
MEYSAM KHABAZHA, :
:
                                Petitioner, :
:            25-CV-5279 (JMF)
              -v- :
:            OPINION AND ORDER
UNITED STATES IMMIGRATION AND :
CUSTOMS ENFORCEMENT et al., :
:
                            Respondents. :
:
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Petitioner Meysam Khabazha is a citizen of Iran who fled his native country in 2010 "after participating in protests against the government and suffering persecution and torture as a result." ECF No. 19 ("Pet."), ¶ 15; *see also* ECF No. 19-2 ("Khabazha Decl."), ¶ 2. He moved to Ecuador but eventually fled from there when Iranian authorities threatened him. *See* Pet. ¶ 15. In November 2022, he entered the United States and was initially detained by immigration authorities, but they then released him on his own recognizance. *See id.* Thereafter, he reported as directed to immigration authorities and filed a timely petition for asylum; in the meantime, he was living in the Bronx and working two jobs, one overnight. *See id.* ¶¶ 17, 19.

      All was well until June 23, 2025, when — without warning or explanation — masked immigration agents appeared at his door and took him into custody. *See id.* ¶ 22, 32. He was detained for about two weeks, then released by an immigration judge on bail and conditions set by Immigration and Customs Enforcement ("ICE"), but then ordered by the same immigration judge to be detained again. *See id.* ¶¶ 23-37. At that point, he sought emergency relief in this Court, whereupon ICE agreed to his release subject to the conditions he had been subject to prior

to the detention order. *See id.* ¶¶ 39-40; *see also* ECF No. 15. Khabazha nevertheless petitions, pursuant to 28 U.S.C. § 2241, for the writ of habeas corpus, arguing that his re-detention followed by release subject to conditions violates his rights under the Due Process Clause of the Fifth Amendment and under the Fourth Amendment. *See* Pet. ¶¶ 47-54.

For the reasons that follow, the Court concludes that Respondents, by re-detaining Khabazha and then releasing him on conditions to which the general public is not subject, without notice or any individualized justification, violated his procedural due process rights. Accordingly, the Petition must be and is GRANTED, and Respondents are ordered to reinstate the conditions under which Khabazha was released prior to his re-detention on June 23, 2025.

## BACKGROUND

As noted, Khabazha is an Iranian citizen who is seeking asylum in the United States. From November 2022 until June 23, 2025, he was at liberty in the United States, released on his own recognizance and living and working, most recently, in the Bronx. *See* Pet. ¶¶ 15, 19, 32; Khabazha Decl. ¶¶ 5-6. On June 23, 2025, Khabazha received a telephone call from someone who identified himself only as "with immigration" and asked for Khabazha's home address and employment information, which Khabazha shared. Khabazha Decl. ¶¶ 11-12. Later that day, four masked immigration agents arrested Khabazha at his home. *Id.* ¶ 13. They handcuffed and transported Khabazha to an ICE holding facility in Manhattan, where detainees were forced to sleep on the floor. *Id.* ¶¶ 13, 15, 17. When Khabazha asked why he had been detained, an officer said that he "had crossed the border." *Id.* ¶ 14. There were approximately forty other detainees in the holding facility, including at least four other Iranian nationals who, like Khabazha, had recently been detained for unknown reasons. *Id.* ¶¶ 16-17. Shortly thereafter, Khabazha was transferred to Orange County Jail in Goshen, New York. *Id.* ¶ 18.

On June 24, 2025, counsel filed Khabazha's initial Petition, seeking release from custody. *See* ECF No. 1. On July 7, 2025, however, Khabazha was granted a bond hearing before an immigration judge ("IJ"), who released him on the statutory minimum bond of $1,500. *See* ECF No. 20-1. In his Order, the IJ also checked a box indicating that ICE "may, at its discretion require [Khabazha] to wear an ankle monitor at all times and may require [Khabazha] to check in at regular intervals." *Id.* at 2. Exercising that authority, ICE imposed additional conditions on Khabazha's release, placing him on the Intensive Supervision Appearance Program, which featured a GPS ankle monitor with a location tracker, home and office visits, a weekly reporting requirement, and certain geographical restrictions. *See* ECF No. 20 ("Love Decl."), ¶ 5; *see also* ECF Nos. 20-2 through -5; ECF No. 19-3 ("Nystedt Decl."), Ex. H, at 64, 70, 93. Khabazha had not been subject to any of these conditions prior to his June 23, 2025 detention. Pet. ¶ 32.

On July 15, 2025, Khabazha filed a motion with the IJ to "ameliorate" the bond conditions, arguing, among other things, that they exacerbated preexisting ankle injuries and interfered with his work schedule. *See* Nystedt Decl. ¶ 14; *id.* Ex. H, at 64-65. One day later, however, the IJ *sua sponte* revoked bond on the ground that, under 8 U.S.C. § 1225(b)(2)(A), Khabazha was ineligible for bond; he then denied the motion to ameliorate as moot. *See* ECF No. 20-6. Khabazha then sought a temporary restraining order from this Court to enjoin Respondents from re-detaining him, as the IJ had ordered. *See* ECF No. 13. The Court scheduled an immediate conference and, moments before the conference, Respondents represented that ICE "agree[d] to honor the terms of [Khabazha's] release as originally ordered by the Immigration Judge on July 7, 2025, namely, $1,500 bond and ICE 'may, at its discretion require [him] to wear an ankle monitor at all times and may require [him] to check in at regular intervals.'" ECF No. 15. Further, ICE agreed that it would "not redetain [Khabazha] during the

3

pendency of his removal proceedings unless [he] violates the conditions of his release or a final order of removal is entered." *Id.*; *see also* ECF No. 19-4, at 3. Based on those assurances, the Court denied the emergency request for a temporary restraining order. *See* ECF No. 17.

Thereafter, Khabazha filed the operative Second Amended Petition. *See* Pet. In it, he asserts that his re-detention on June 23, 2025, violated his substantive and procedural due process rights as well as the Fourth Amendment. *See* Pet. ¶¶ 47-54. He seeks "unconditional release from custody on conditions equivalent to those that existed prior to his June 23, 2025 detention." *Id*. Prayer for Relief ¶ c.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, a federal court may grant the writ of habeas corpus to a non-citizen who is "in custody in violation of the Constitution or laws or treaties of the United States." *Henderson v. I.N.S.*, 157 F.3d 106, 122 (2d Cir. 1998) (internal quotation marks omitted) (quoting 28 U.S.C. § 2241); *see also Boumediene v. Bush*, 553 U.S. 723, 771 (2008). "[C]laims that the discretionary process [of detention] itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). In a Section 2241 habeas petition, the petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Parke v. Raley*, 506 U.S. 20, 31 (1992), and *Walker v. Johnston*, 312 U.S. 275, 286 (1941)); *accord Dzhabrailov v. Decker*, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020).

**DISCUSSION**

Although no longer detained, Khabazha contends that he is subject to restrictions on his liberty that were imposed in violation of his rights under the Due Process Clause of the Fifth Amendment and under the Fourth Amendment. *See* Pet. ¶¶ 47-54. Before the Court can address the merits of those claims, however, it must consider several arguments pressed by Respondents: first, that Khabazha is no longer "in custody" as required by Section 2241; second, that even if Khabazha is "in custody" for purposes his habeas, his claims are moot; and third, that the Court lacks jurisdiction in light of 8 U.S.C. § 1226(e). *See* ECF No. 22 ("Resps.' Mem."), at 4-7, 10-11.[1] Thus, the Court begins with these threshold issues.

**A. Threshold Issues**

All three of Respondents' threshold arguments are without merit. First, Khabazha is plainly "in custody" for purposes of Section 2241. The Supreme Court and the Second Circuit have long held that the "custody requirement" in Section 2241, as in 28 U.S.C. § 2254, "may be satisfied by restraints other than 'actual, physical custody' incarceration." *Vega v. Schneiderman*, 861 F.3d 72, 74 (2d Cir. 2017) (quoting *Jones v. Cunningham*, 371 U.S. 236, 239-40 (1963)); *Nowakowski v. New York*, 835 F.3d 210, 216 (2d Cir. 2016) (citing cases).[2] The relevant test is whether the petitioner "is subject to restraints not shared by the public generally."

---

[1]    In his opening memorandum of law, Khabazha argued that he should not be required to exhaust his administrative remedies before seeking relief in this Court. *See* ECF No. 19-1, at 6-8. Respondents do not argue otherwise and, thus, have forfeited any such argument. *See, e.g.*, *Roberts v. Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016) (summary order) ("[A] party may forfeit a right or defense by actively litigating other issues and forgoing the opportunity to litigate that right or defense.").

[2]    Because Sections 2241 and 2254 contain the same "in custody" language, courts rely on Section 2254 decisions in construing Section 2241's "'in custody' requirement." *E.g.*, *Rodriguez v. United States*, No. 20-14114, 2023 WL 2199054, at *2 n.4 (11th Cir. Feb. 24, 2023).

5

*Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 351 (1973) (internal quotation marks omitted). Applying that test here, the Court finds that Khabazha plainly satisfies the "in custody" requirement. Although Khabazha has been released from ICE detention, he is subject to restraints on his liberty "not shared by the public generally," *id.*, including the requirements that he "wear an ankle monitor at all times" and "check in at regular intervals." ECF Nos. 15, 15-1. Those conditions "render[] him 'in custody' for purposes of his habeas petition." *Doe v. Barr*, 479 F. Supp. 3d 20, 26 (S.D.N.Y. 2020) (Nathan, J.); *see also, e.g.*, *Flores Salazar v. Moniz*, No. CV 25-11159 (LTS), 2025 WL 1703516, at *5 (D. Mass. June 11, 2025) (finding that the non-citizen petitioner satisfied the custody requirement to bring a habeas petition because he was subject to supervised release conditions imposed by ICE); *Orellana Juarez v. Moniz*, No. 25-CV-11266 (MJJ), 2025 WL 1698600, at *3-4 (D. Mass. June 11, 2025) (same).

In arguing otherwise, Respondents rely on the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). *See* Resps.' Mem. 7. The *Jennings* Court, Respondents contend, "concluded that 'the word "detain" in the relevant statutory provisions' means that an alien is physically in the custody of immigration officials, not merely 'the absence of unrestrained freedom'" and, thus, "expressly rejected the notion that '[a]n "alien released on bond" would *also* be a "detained alien."'" *Id.* (quoting *Jennings*, 583 U.S. at 307-08). But this is sleight of hand. The discussion in *Jennings* involved the meaning of "detained" (a different, albeit related, term to the one at issue here, namely "in custody") in 8 U.S.C. §§ 1225 and 1226, statutes that are not relevant here. *See Jennings*, 583 U.S. at 307-09. The *Jennings* majority did not address, let alone overrule, its longstanding precedent construing "in custody" within the meaning of Section 2241 more "broad[ly] to include restraints short of physical confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004); *see id.* at 437 n.10 (citing "landmark cases

6

addressing the meaning of 'in custody' under the habeas statute" dating back to 1963).  To accept Respondents' argument, therefore, would violate the "presumption that the Supreme Court does not overrule itself *sub silentio*."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 149 (2d Cir. 2012) (citing *Hohn v. United States,* 524 U.S. 236, 252-53 (1998)).

Second, given that Khabazha is "in custody" for habeas purposes, his Petition is plainly not moot.  "[A] case that is live at the outset may become moot when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the [claimed] injury."  *Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum. Servs.*, 145 F.4th 212, 223 (2d Cir. 2025) (internal quotation marks omitted).  That is not the situation here, as Khabazha challenges the *existing* conditions of his release.  By contrast, in the cases cited by Respondents, *see* Resps.' Mem. 5-7, the petitioner had already obtained all of the relief that he or she had sought, *see, e.g.*, *Leybinsky v. U.S. Immigr. & Customs Enf't*, 553 F. App'x 108, 109 (2d Cir. 2014) (summary order); *Pierrilus v. U.S. Immigr. & Customs Enf't*, 293 F. App'x 78, 79 (2d Cir. 2008) (summary order); *Edwards v. Ashcroft*, 126 F. App'x 4, 4 (2d Cir. 2005); *Pierre-Paul v. Sessions*, 293 F. Supp. 3d 489, 492-93 (S.D.N.Y. 2018) (Nathan, J.), or had been deported, *see, e.g.*, *Pena v. Lynch*, 257 F. Supp. 346, 347 (S.D.N.Y. 2017); *Jackson v. Holder*, 893 F. Supp. 2d 629, 631 (S.D.N.Y. 2012).  These cases are plainly inapposite here.

Third, there is no merit to Respondents' contention that Section 1226(e) precludes the Court from considering Khabazha's claims.  *See* Resps.' Mem. 10-11.  Section 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the . . . denial of bond or parole."  8 U.S.C. § 1226(e).  Significantly, however, the Supreme Court and Second Circuit have "made clear that § 1226(e) does not preclude challenges 'to the extent of the Government's detention

7

authority under the statutory framework as a whole.'" *Velasco Lopez*, 978 F.3d at 850 (quoting *Jennings*, 583 U.S. at 295-96). "Nor does it 'limit habeas jurisdiction over constitutional claims or questions of law.'" *Id.* (quoting *Singh*, 638 F.3d at 1202); *see Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and . . . its clear text does not bar [a petitioner's] constitutional challenge . . . ."). Thus, where, as here, a petitioner "does not challenge the IJ's weighing of the evidence presented at his bond hearing or the IJ's discretionary decision to deny bond[,] but rather asserts that the procedures for that bond hearing were constitutionally and statutorily infirm," Section 1226(e) "does not strip the Court of jurisdiction." *Cazahuatl Torres v. Decker*, No. 18-CV-10026 (VEC), 2018 WL 6649609, at *1 (S.D.N.Y. Dec. 19, 2018); *accord J.C.G. v. Genalo*, No. 24-CV-08755 (JLR), 2025 WL 88831, at *3 (S.D.N.Y. Jan. 14, 2025).

**B. Constitutional Claims**

Having addressed the threshold question of jurisdiction, the Court turns to Khabazha's constitutional claims. Khabazha argues that his June 23, 2025 re-detention—and the release conditions that stem from that detention — violated his substantive and procedural rights under the Due Process Clause and his rights under the Fourth Amendment. *See* Pet. ¶¶ 47-54. The Court begins with Khabazha's procedural due process claim.

The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. V. It is well established that the protections of the Due Process Clause extend to non-citizens subject to immigration detention. *See, e.g.*, *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Velasco Lopez*, 978

F.3d at 850 ("[T]he Fifth Amendment entitles noncitizens to due process of law[] . . . whether their presence here is lawful, unlawful, temporary, or permanent."). Indeed, "[t]he Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Velasco Lopez*, 978 F.3d at 850. Efficiency of immigration enforcement cannot come "at the expense of fairness and due process." *Ceesay v. Kurzdorfer*, 781 F. Supp. 137, 144 (W.D.N.Y. 2025).

Additionally, courts have consistently held that the Due Process Clause mandates that noncitizens who are released on their own recognizance, such as Khabazha, are entitled to some process before being re-detained. *See, e.g.*, *Guzman Cardenas v. Almodovar*, No. 25-CV-9169 (JMF), 2025 WL 3215573, at *3 (S.D.N.Y. Nov. 18, 2025); *Tumba Huamani v. Francis*, No. 25-CV-8110 (LJL), 2025 WL 3079014, at *1, *6-7 (S.D.N.Y. Nov. 4, 2025); *Lopez Benitez v. Francis*, No. 25-CV-5937 (DEH), 2025 WL 2371588, at *1, *12-13 (S.D.N.Y. Aug. 13, 2025); *Chipantiza-Sisalema v. Francis*, No. 25-CV-5528 (AT), 2025 WL 1927931, at *1, *3 (S.D.N.Y. July 13, 2025); *Valdez v. Joyce*, 25-CV-4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("In the context of revocation of civil release, 'an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing.'" (quoting *Villiers v. Decker*, 31 F.4th 825, 833 (2d Cir. 2022)); *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 353-54, 365, 373 (S.D.N.Y. 2019); *Arevalo Lopez v. Sessions*, No. 18-CV-4189 (RWS), 2018 WL 2932726, at *11-12 (S.D.N.Y. June 12, 2018).

Courts generally evaluate procedural due process challenges "in the context of civil immigration confinement" using the three-factor test established by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Lopez Benitez*, 2025 WL 2371588, at *9; *see also*

9

*Black v. Decker*, 103 F.4th 133, 147-48 (2d Cir. 2024); *Velasco Lopez*, 978 F.3d at 851; *Chipantiza-Sisalema,* 2025 WL 1927931, at *2; *Valdez*, 2025 WL 1707737, at *3. Under that test, a court must weigh: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. In this case, the Court concludes that all three factors weigh in favor of Khabazha.

1. **Khabazha's Private Interest**

First, Khabazha's private interest is strong. "Freedom . . . lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas,* 533 U.S. at 690. Such liberty includes not only freedom from "detention," but also freedom from "other forms of physical restraint," such as conditions of release. *Id; see also, e.g.*, *Young v. Harper*, 520 U.S. 143, 147-49 (1997); *Morrisey v. Brewer*, 408 U.S. 471, 482 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others."). Accordingly, courts have held that the first *Mathews* factor cuts in favor of petitioners who were released from ICE detention subject to conditions and the threat of re-detention. *See, e.g.*, *Garro Pinchi v. Noem*, No. 25-CV-05632-PCP, 2025 WL 2084921, at *4 (N.D. Cal. July 24, 2025) ("[The petitioner's] release from ICE custody constituted an 'implied promise' that her liberty would not be revoked unless she 'failed to live up to the conditions of her release.'" (quoting *Morrissey*, 408 U.S. at 482)); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) ("[I]ndividuals conditionally released from detention have a protected interest in their 'continued liberty'" (citing *Young*, 520 U.S. at

10

147, 149, 152-53)); *see also Singh v. Andrews*, No. 25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *6 (E.D. Cal. July 11, 2025) ("Petitioner's release from custody in January 2024 and ties to his community provide him with a protected liberty interest."); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3-4 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released on bond have a strong liberty interests).

In light of this precedent, the Court concludes that the first *Mathews* factor favors Khabazha. As a direct result of ICE's decision to re-detain Khabazha in June 2025, Khabazha is now subject to new conditions of release that restrict his liberty. He had been residing freely in the Bronx for over two and a half years and, at the time of his arrest, was working two jobs, providing for his family, and serving as an active member of his community and church. *See* Khabazha Decl. ¶¶ 4-7, 10-11; Nystedt Decl. Ex. E, at 25 (letter from the Minister of the Persian Church of New York Jesus in support of Khabazha). Moreover, at the time of his arrest, Khabazha was in the process of receiving dental treatment for two broken teeth and medical care for fractures in both of his ankles, which cause him chronic pain. Khabazha Decl. ¶¶ 5, 9, 10; Nystedt Decl. Ex. D (medical records). Khabazha's re-detention compromised his employment, and the frequent reporting requirements have affected his ongoing ability to work. *See* Nystedt Decl. ¶ 14; *id.* Ex. H, at 65, 93-94. Moreover, Khabazha has not been able to "get an x-ray because of the ankle monitor," preventing him from pursuing medical treatment for his injuries. *Id*. at 93. And the weight of the ankle monitor alone causes Khabazha significant pain and swelling because of his injuries. *Id.* Although it is plainly true that "[r]elief from bond and conditions presents a [] less weighty private interest than detention," Resps.' Mem. 16, the conditions imposed by ICE have interfered with Khabazha's health, employment, and freedom of movement. Thus, they implicate fundamental liberty interests protected by the Due Process

11

Clause. *See, e.g.*, *Doe*, 479 F. Supp. 3d at 30 (noting that the "private interest [affected by ICE's Order of Supervision when petitioner was released] is significant"); *Flores Salazar*, 2025 WL 1703516, at *5, 8 (D. Mass. June 11, 2025) (noting that a petitioner subject to an ICE ankle monitoring program "plainly . . . experience[s] substantial limitations on his liberty").

### 2. The Risk of Erroneous Deprivation

Next, the Court must evaluate "the fairness and reliability of the existing . . . procedures, and the probable value, if any, of additional procedural safeguards." *Mathews*, 424 U.S. at 343. Significantly, the primary interest for purposes of this factor is not that of the Government but that of the person facing the deprivation of liberty. *See, e.g.*, *Hamdi*, 542 U.S. at 530.

This factor also favors Khabazha for the simple reason that he was afforded no process at all before he was re-detained on June 23, 2025. In 2022, Khabazha was released from detention on his own recognizance — a determination that required ICE to conclude that he posed neither a danger to the community nor a flight risk at that time. *See* 8 C.F.R. § 1236.1(c)(8). In 2025, Khabazha was abruptly re-detained by four masked men after receiving an anonymous call from a person who claimed to be an immigration official. Significantly, Respondents offered no justification for this change of position — either then or since. Nor did they provide Khabazha with notice or (at least until his bail hearing two weeks later) an opportunity to be heard. Taken together, this absence of process plainly "establishes a high risk of erroneous deprivation of his protected liberty interest." *Lopez Benitez*, 2025 WL 2371588, at *12 (internal quotation marks omitted); *see also Valdez*, 2025 WL 1707737, at *3-4 (finding a risk of erroneous deprivation in the context of re-detention absent a change in circumstances, procedure, or evidentiary findings (citing *Mathews*, 424 U.S. at 335)); *Flores Salazar*, 2025 WL 1703516, at *7-8 (granting a habeas petition where "[t]he record contains no evidence suggesting there was any other material

12

change in [the petitioner's] circumstances that justified an individualized redetermination or revocation of his parole status" nor "any evidence establishing that such an individualized redetermination or revocation was undertaken").

Respondents' counterarguments fail to persuade. First, Respondents repeatedly assert that they made an "individualized" determination of Khabazha's case. *See* Resps.' Mem. 1, 2, 9, 13, 15; *see also* ECF No. 21, ¶ 6 ("Kubicz Decl."). But this bare assertion — which could presumably be made in *any* case involving detention — is not enough, especially where, as here, it is "directly at odds with the" earlier "contrary . . . decision to release [Khabazha] on his own recognizance." *Valdez*, 2025 WL 1707737, at *3. When the government seeks to curtail a person's liberty, "[t]he law requires a change in relevant *facts*, not just a change in attitude." *Id.* at *3 n.6 (emphasis added). The decision must also be "reasonably explained." *Biden v. Texas*, 597 U.S. 785, 807 (2022). Here, Respondents' decision was neither "reasonably explained" nor supported by any change in relevant facts.[3] Indeed, there is no evidence in the record indicating "(1) who made the decision to detain [Khabazha], (2) when that decision occurred, (3) on what basis the decision to detain him was made, (4) whether there was any material change in circumstances with respect to him that triggered his detention, or (5) whether there was any sort of new policy in place that triggered his detention." *Lopez Benitez*, 2025 WL 2371588, at *11; *accord Guzman Cardenas*, 2025 WL 3215573, at *3; *Tumba Huamani*, 2025 WL 3079014, at *6. This failure to provide even minimal reasoning or process unmistakably means that Khabazha's liberty was at risk of erroneous deprivation.

---

[3] Khabazha suggests that he may have been detained pursuant to a policy targeting non-citizens of Iranian descent. *See* ECF No. 19 ("Pet."), ¶¶ 41-46 (summarizing articles accusing the Administration of waging a detention campaign against Iranians); *see also* ECF No. 19-3 ("Nystedt Decl."), Ex. F (reproducing articles to that effect). Notably, Respondents do not dispute, let alone refute, that suggestion.

Second, Respondents point to the fact that Khabazha was afforded a bond hearing approximately two weeks after his re-detention. *See* Resps.' Mem. 15-16. But if Khabazha's re-detention violated his due process rights in the first instance, a later bond hearing cannot remedy that constitutional violation. *See Tumba Huamani*, 2025 WL 3079014, at *7 ("That Petitioner's detention violated her due process rights, and that a bond hearing could not cure that constitutional violation, is evident also from the scheme envisioned by the statute and regulations."). In fact, under the statutory scheme, "[s]uch hearings" are expressly "provided for the purpose of custody *re*-determination — a hearing held by an immigration judge *after* ICE makes its initial decision to detain." *Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (citing 8 C.F.R. § 236.1(d)) (second emphasis added). It follows that "[s]uch a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Id.* (internal quotation marks omitted); *accord Tumba Huamani*, 2025 WL 3079014, at *8.[4]

Finally, Respondents point to Section 1226(b), which provides that the Secretary of Homeland Security "at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b); *see also* 8

---

[4] The bond hearing here is not sufficient to address the constitutional problem for another reason: The IJ ultimately concluded that he lacked discretion to consider Khabazha's individual circumstances at all because his detention is mandatory under 8 U.S.C. § 1225(b)(2)(A). *See* ECF No. 20-6, at 2. Interestingly, although Respondents themselves have adopted that understanding of the statutory scheme in other litigation, *see, e.g.*, *Guzman Cardenas v. Almodovar*, No. 25-CV-9169 (JMF), 2025 WL 3215573, at *2-3 (S.D.N.Y. Nov. 18, 2025), they do not take it here: They concede that Khabazha is subject to detention under Section 1226(a), *see* Nystedt Decl. ¶ 12; *see also* Resps.' Mem. 15. In any event, this Court — like most district courts that have considered the issue — has squarely rejected the IJ's view. *See Guzman Cardenas*, 2025 WL 3215573, at *2 (collecting cases). It is ironic, to say the least, for Respondents to simultaneously distance themselves from the IJ proceedings (and to consent to ignore his order of detention altogether) and to point to those proceedings as evidence that Khabazha received constitutionally adequate process.

14

C.F.R. §§ 236.1(c)(9), 1236.1(c)(9) ("[S]uch release [under § 1226(a)] may be revoked at any time in the discretion of [certain immigration officers, including the district director], in which event the alien may be taken into physical custody and detained.").[5]  But "[t]he issue here is not the permissibility of immigration detention" — which Khabazha does not dispute — "but rather the process required in connection with such detention." *Valdez*, 2025 WL 1707737, at *3. Respondents plainly enjoy significant discretion under Section 1226, but they "still must follow [their] own regulations [and] procedures" when they deprive a noncitizen of his liberty. *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017); *see, e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *9, 11; *see also Montilla v. INS*, 926 F.2d 162, 166-67 (2d Cir. 1991) (noting that the *Accardi* doctrine is the "long-settled principle that rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency" and "is premised on fundamental notions of fair play underlying the concept of due process").  Before exercising "such discretion to detain a person, '§ 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination.'" *Lopez Benitez*, 2025 WL 2371588, at *10 (quoting *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, No. 20-2153, 2020 WL 7973940 (2d Cir. Oct. 13, 2020)) (holding that Section 1226(a) statutorily requires an "initial detention decision by DHS" and that "[i]f all noncitizens subject to § 1226(a) could simply be detained on a categorical (or arbitrary)

---

[5]  The relevant statutory sections refer to the Attorney General, but the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, transferred all immigration enforcement and administration functions vested in the Attorney General, with few exceptions, to the Secretary of Homeland Security.  The Attorney General's authority to detain or authorize bond under Section 1226(a) — delegated to immigration judges, *see* 8 C.F.R. § 1003.19(d) — is "one of the authorities he retains . . . although this authority is shared with [DHS] because officials of that department make the initial determination whether an alien will remain in custody during removal proceedings." *Matter of D-J-*, 23 I. & N. Dec. 572, 574 n.3 (A.G. 2003).

basis without any kind of individualized assessment, it would make little sense to permit such individuals an opportunity to challenge their detention by an appeal before an immigration judge on the basis of specific factors such as dangerousness or flight risk"); *Chipantiza-Sisalema*, 2025 WL 1927931, at *3. And, as discussed above, the record reveals no such individualized custody determination here.

In short, given the complete lack of any process prior to Khabazha's re-detention, the risk of erroneous deprivation here was high. *Cf., e.g.*, *Black*, 103 F.4th at 152.

### 3. The Government's Interest

Finally, the third *Mathews* factor also weighs in Khabazha's favor. To be sure, as Respondents contend, immigration authorities have strong interest in enforcement of the nation's immigration laws and broad discretion to detain noncitizens and impose supervised release conditions. *See* Resps.' Mem. 13. That discretion, however, is constrained: A restraint on liberty imposed under Section 1226 is "valid" only "where it advances a legitimate governmental purpose." *Velasco Lopez*, 978 F.3d at 854. And because civil immigration detention is inherently non-punitive, it is justified solely to address a risk of flight or a potential danger to the community. *See Zadvydas*, 533 U.S. at 690-91. Thus, re-detention and the imposition of release conditions absent any showing of flight risk or danger does not serve these statutory purposes. *See, e.g.*, *Velasco Lopez*, 978 F.3d at 854-55; *Lopez Benitez*, 2025 WL 2371588, at *12. Here, "there is nothing in the record demonstrating that [Khabazha] is a flight risk or a danger to the community." *Lopez Benitez*, 2025 WL 2371588, at *12. To the contrary, the record shows that he "regularly attended his immigration court appearances, filed an asylum application, obtained employment . . . , regularly attended church, and has significant family ties in New York." *Id.*; *see also* Pet. ¶¶ 17-19. "Respondents have therefore clearly failed to show a significant interest

16

in [Khabazha's] continued [restraints on liberty]." *Lopez Benitez*, 2025 WL 2371588, at *12 (internal quotation marks omitted).

4. Relief

In short, given Khabazha's significant liberty interest, the high risk of erroneous deprivation, and Respondents' utter failure to show a significant governmental interest in Khabazha's re-detention and release subject to conditions, Respondents' ongoing restrictions of Khabazha's liberty, "with no process at all, much less prior notice, no showing of changed circumstances, or opportunity to respond, violates his due process rights." *Id.* at *13 (internal quotation marks omitted).[6] That leaves only the question of relief.

"The typical remedy for [unlawful] detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody."). Indeed, as far back as 1670, it was said that habeas is a "remedy by which a man is restored again to his liberty, if he have been against law deprived of it.'" *Preiser*, 411 U.S. at 484-85 (quoting *Bushell's Case*, Vaughan 135, 136, 124 Eng. Rep. 1006, 1007 (C.P. 1670)). It follows that Khabazha is entitled to release from the unlawful restrictions on his liberty — which means, in the circumstances here, restoration of the conditions of his release prior to his re-detention on June 23, 2025. *See, e.g.*, *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019) ("As Petitioner's arrest and detention were blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore Plaintiff is to immediate release him and enjoin the Government from further similar transgressions."); *see also, e.g., Taylor v. Ledbetter,* 818 F.2d

---

[6] In light of that conclusion, the Court need not and does not reach Khabazha's substantive due process and Fourth Amendment arguments for relief.

791, 822 (11th Cir. 1987) (Tjoflat, J., concurring in part and dissenting in part) ("The remedy for a procedural due process violation is restoration of the status quo ante and an injunction barring deprivation of the plaintiff's rights without the requisite procedural protections." (citing *Mathews,* 424 U.S. at 349)); *Cardin Alvarez v. Rivas*, No. CV 25-02943 PHX GMS (CDB), 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025) ("The appropriate relief for an immigration detainee held in violation of their right to due process is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy."), *report and recommendation adopted in part, rejected in part on other grounds sub nom. Alvarez v. Rivas*, No. CV-25-02943-PHX-GMS, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

## CONCLUSION

For the reasons stated above, Khabazha's Petition for the writ of habeas corpus is GRANTED, and Respondents are ORDERED to promptly release him from the restrictions on his liberty imposed as a result of his unlawful re-detention on June 23, 2025 — including the ankle monitor and reporting requirements.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: November 25, 2025
       New York, New York

                                        JESSE M. FURMAN
                                        United States District Judge